2021 IL App (1st) 200507-U

No. 1-20-0507

Order filed November 1, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 9705 |
| | ) | |
| CHILS CLEMONS, | ) | Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in declining to sentence defendant below the statutory guidelines.

¶ 2    Following a bench trial, defendant Chils Clemons was found guilty of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)) and sentenced to eight years' imprisonment. On appeal, defendant argues that the trial court erred in declining to sentence him below the statutory guidelines. We affirm.

¶ 3     At trial, Chicago police officer Wood testified that she and a partner, Officer Ewing, were on patrol around 12:02 p.m. on June 13, 2018, near the 13000 block of South Bishop Ford Expressway, in Chicago. Ewing drove them in an unmarked vehicle, and Wood randomly checked license plates, including the license plate of a white 2018 Chevrolet Impala, which she learned had been reported stolen. The officers activated their lights, pulled in front of the Impala, and Wood exited the police vehicle. The Impala attempted to drive around the police vehicle. Wood drew her weapon and ordered the Impala's occupants to raise their hands. The driver complied, and the rear passenger placed an object, later determined to be a cell phone, on the seat and raised his hands. The front passenger, whom Wood identified as defendant, moved his arms "around his waistband." Wood again ordered defendant to raise his hands, and defendant leaned towards the floorboard. Wood approached the passenger side of the Impala, and defendant raised his hands.

¶ 4     Wood removed defendant from the vehicle and recovered a semiautomatic Ruger P89 handgun which was loaded and "partially stove piped" (meaning it could accidentally discharge) from the same area where she observed defendant reaching down in the vehicle. Officer Wood's testimony was consistent with her body camera footage.

¶ 5     The parties stipulated that defendant had previously been convicted of the predicate felony offense of home invasion. Defendant was found guilty of the offense of UUWF.

¶ 6     At the sentencing hearing, the parties amended the PSI to reflect that defendant's father was murdered in defendant's presence when defendant was four years old. The court noted that defendant had received a 21-year sentence for the home invasion conviction, including a 15-year firearm enhancement. Regarding the facts of that case, the court was advised that on April 14, 2005, defendant and a co-offender approached the victim as she was leaving her house to take her

two children to school. After defendant "put a gun into her back," the victim told her children to get in her vehicle. She was led back into her home by the offenders and held at gunpoint while they "ransacked the entire place." Eventually, the children came to the door of the house and were ordered into a closet. The offenders fled in the victim's vehicle with "bags of the victim's things out of the home."

¶ 7    Lisa Weaver-Hill, defendant's girlfriend, testified at the sentencing hearing that defendant lived with her and her two daughters. Defendant serviced vehicles with his stepfather and "would go through temp agencies." Prior to moving in with Weaver-Hill, defendant was the primary caregiver for his sick mother. Weaver-Hill explained that she and her daughters were negatively affected by defendant's incarceration.

¶ 8    In aggravation, the State argued that defendant had possessed a loaded semiautomatic firearm while on parole for the offense of home invasion (which also involved a firearm). Noting that defendant faced a mandatory sentence between the range of seven to fourteen years, the State requested a sentence "in the higher end of the range."

¶ 9    In mitigation, defense counsel argued that defendant was 16 when he committed the home invasion; that the law had changed concerning discretionary transfers to juvenile court since the date of that conviction;[1] that he did not cause or threaten physical harm in the instant offense; and that his incarceration had negatively affected the well-being of his girlfriend and her children. He urged the court to depart from the statutory sentencing guidelines based on (1) defendant's age, immaturity, or limited mental capacity at the time of the home invasion, and that the co-offender

---

[1] Counsel argued that under the current law, "he could have been a discretionary transfer," so there was a chance that the home invasion conviction "would not have been a qualifying predicate offense under the statute."

in the home invasion was older than defendant, was the "ringleader," and did most of the ransacking; (2) the amount of time that had elapsed between the two offenses; (3) the absence of any bodily harm or threats; and (4) defendant's potential for rehabilitation.

¶ 10    In allocution, defendant reiterated that he was only 16 and "easily influenced" when he committed the home invasion and that a lengthy sentence had been imposed for that offense. He requested leniency on behalf of himself and his family.

¶ 11    The court stated that it had considered the PSI and letter from defendant's sister, his girlfriend's testimony, the arguments of counsel, and all other factors presented in aggravation and mitigation, both statutory and non-statutory. Although concluding that there was not a "substantial compelling justification" to depart from the sentencing guidelines, the court determined that it would be inappropriate to sentence defendant "at the high end of the scale" based on his rehabilitative potential.

¶ 12    On appeal, defendant argues that the court abused its discretion by not departing from the statutory sentencing guidelines. He asserts that he was eligible for a downward departure given his youth at the time the predicate offense was committed, his educational and vocational potential, the non-violent nature of the instant offense, and his family ties.

¶ 13    Initially, we note that the record does not indicate that defendant filed a motion to reconsider sentence. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). Nevertheless, as the State has not raised the issue of forfeiture, we will consider the merits of defendant's claims. See *People v. Jones*, 2018 IL App (1st) 151307, ¶ 47 ("The State may forfeit a claim of forfeiture by failing to raise it.").

Since defendant's PSI is not in the record, any doubts arising from the incompleteness of the record will be construed against the defendant. *People v. Resendiz*, 2020 IL App (1st) 180821, ¶ 35 (appellant has burden to provide complete record, and doubts arising from incomplete record are construed against appellant).

¶ 14    In imposing sentence, the court must balance the seriousness of the offense with the objective of restoring the defendant to useful citizenship. Ill. Const. 1970, art. I, § 11. Substantial deference is afforded the sentencing court, as the court is better positioned to consider the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36. On review, we will not modify a sentence absent an abuse of discretion. *Id.*

¶ 15    A sentence within statutorily-mandated guidelines is presumptively proper, and will not be overturned or reduced unless it is affirmatively shown to greatly depart from the spirit or purpose of the law, or is manifestly contrary to constitutional guidelines. *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 50. We will not substitute our judgment for the sentencing court's merely because we would have balanced the sentencing factors differently (*People v. Alexander*, 239 Ill. 2d 205, 213 (2010)), and absent evidence to the contrary, we presume the sentencing court considered the mitigating factors before it (*People v. Flores*, 404 Ill. App. 3d 155, 158 (2010)). The seriousness of the offense is the most important factor in determining sentence, and a sentencing court need not weigh that factor less than the defendant's rehabilitative potential. *Jackson*, 2014 IL App (1st) 123258, ¶ 53.

¶ 16    Defendant was found guilty of UUWF (720 ILCS 5/24-1.1(a) (West 2018)). He does not dispute that he was subject to a sentencing range of 7 to 14 years or that home invasion is a

qualifying predicate offense under section 5-4.5-110 of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-110(a)(L), (c)(1) (West 2018)). Therefore, defendant's eight-year sentence is presumptively proper. *Jackson*, 2014 IL App (1st) 123258, ¶ 50.

¶ 17    As defendant notes, section 5-4.5-110 of the Code allows a departure from the sentencing guidelines if the court finds substantial and compelling justification a sentence within guidelines would be unduly harsh and a sentence below guidelines would not jeopardize public safety or deprecate the seriousness of the offense. 730 ILCS 5/5-4.5-110(d)(1) (West 2018). The court should consider, *inter alia*: the defendant's age, immaturity, or limited mental capacity at the time of the predicate offense; the nature and circumstances of the predicate offense and current offense; the time elapsed since the predicate offense; and whether departure is in the interest of the defendant's rehabilitation, including his employment, education, or vocational training, after accounting for past rehabilitation efforts, dispositions of probation or supervision, and cooperation or response to rehabilitation. 730 ILCS 5/5-4.5-110(d)(2)(A), (B), (C), (D), (H) (West 2018).

¶ 18    In the instant case, in response to the State's request for a sentence at the higher end of the sentencing range, defense counsel argued that the predicate offense was committed 13 years earlier, when defendant was only 16 and more susceptible to negative influences, that defendant's co-offender was more culpable, and that although defendant was tried as an adult, he would have been eligible for a discretionary transfer to juvenile court under the current state of the law. Counsel also argued that the defendant's crime did not cause or threaten physical harm, his employment and education history indicated rehabilitative potential, and that his family had been negatively impacted by his incarceration.

¶ 19    The record establishes that the court considered defendant's PSI, the letter from his sister, his girlfriend's testimony, the arguments of counsel and all other factors in aggravation and mitigation presented at the sentencing hearing. The court did not find substantial and compelling justification to depart from the sentencing guidelines. However, the court imposed a sentence at the lower end of the sentencing range based on its belief that defendant had rehabilitative potential. Nothing in the record suggests that the court failed to consider the mitigating evidence introduced at the sentencing hearing. See *Flores*, 404 Ill. App. 3d at 158 (absent evidence to the contrary, reviewing court presumes sentencing court considered mitigating evidence before it).

¶ 20    Defendant notes that the legislative history of section 5-4.5-110 of the Code, including a sunset clause, shows concern for potentially "draconian" sentences and cites studies to argue that lengthy sentences, especially for young offenders, do not provide rehabilitation or deterrence. Since those studies were not presented to the trial court, we decline to consider them. See *People v. Magee*, 374 Ill. App. 3d 1024, 1030 (2007) (striking portion of defendant's brief which discussed psychological studies because they were not presented at trial or part of record on appeal); *People v. Mehlberg*, 249 Ill. App. 3d 499, 531-32 (1993) (declining to take judicial notice of evidentiary material not presented below).

¶ 21    The sentencing court "may depart from the sentencing guidelines" when, "after considering any factor *** relevant to the nature and circumstances of the crime and to the history and character of the defendant," it finds on the record "substantial and compelling justification." 730 ILCS 5/5-4.5-110(d)(1) (West 2018). Here, the court did not find such justification, and defendant's contentions amount to a request that we reweigh the sentencing factors, which we may not do. *Alexander*, 239 Ill. 2d at 213.

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 23    Affirmed.