NOTICE

Decision filed 10/07/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200204-U

NO. 5-20-0204

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-CF-3510 |
| | ) | |
| ERNIE L. SYKES, | ) | Honorable |
| | ) | Richard L. Tognarelli, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's imposition of a 125-year sentence was not excessive.

¶ 2    Defendant, Ernie L. Sykes, was convicted when he was 56 years old of first degree murder (720 ILCS 5/9-1(a)(1) (West 2016)) and attempted first degree murder (*id.* § 8-4(a)). The trial court sentenced him to 125 years in prison. Defendant appeals, arguing that the court abused its discretion by failing to properly consider his mental health diagnoses, substance abuse issues, and rehabilitative potential. For the following reasons, we affirm.

¶ 3                                 I. Background

¶ 4    In the early morning hours of November 21, 2018, defendant went to Alton, Illinois, to the home of Angel Syddall (Angel), defendant's ex-girlfriend, and Daniel Ferrel (Daniel), Angel's roommate and coworker. Defendant shot Angel seven times in her arms, chest, left breast, and

1

abdomen, killing her. Defendant also shot Daniel three times in the leg, chest, and abdomen, injuring him. Following his arrest, the State charged defendant with various offenses related to the incident.[1]

¶ 5    Following defendant's four-day jury trial, which commenced on March 2, 2020, a unanimous jury found defendant guilty of first degree murder and attempted first degree murder. Following his sentencing hearing, the trial court sentenced defendant to 125 years in the Illinois Department of Corrections (IDOC), with 85 years' imprisonment for the first degree murder conviction followed by a consecutive term of 40 years' imprisonment for the attempted first degree murder conviction, with no possibility of parole.

¶ 6    Evidence presented at defendant's sentencing hearing, which included his presentence investigation report (PSI),[2] revealed defendant had a lengthy history of prior delinquency and criminal activity dating back to 1986. In total, defendant had 6 misdemeanor convictions and 10 felony convictions, including, among others, the forcible felony of burglary on March 30, 1990,

---

[1]On December 13, 2018, defendant was charged by a five-count indictment, which alleged that on or about November 21, 2018, defendant committed the offenses of (1) first degree murder (count I) (720 ILCS 5/9-1(a)(1) (West 2016)), a Class M felony, in that defendant, without lawful justification and by means of personally discharging a firearm, and with the intent to kill or cause great bodily harm to his victim, Angel, shot the victim multiple times about her body, thereby causing her death; (2) first degree murder (count II) (*id.* § 9-1(a)(2)), a Class M felony, in that defendant, without lawful justification and by means of personally discharging a firearm, and knowing such act created a strong probability of her death or great bodily harm, shot Angel multiple times in the body, thereby causing her death; (3) attempted first degree murder (count III) (*id.* § 8-4(a)), a Class X felony, in that defendant, with intent to kill his victim, Daniel, and by means of personally discharging a firearm, performed a substantial step toward the commission of the offense in that he shot Daniel multiple times about his body; (4) aggravated battery with a firearm (count IV) (*id.* § 12-3.05(e)(1)), a Class X felony, in that defendant knowingly and by means of discharging a firearm, caused an injury to Daniel when defendant shot Daniel multiple times about his body; and (5) armed habitual criminal (count V) (*id.* § 24-1.7(a)), a Class X felony, where defendant, a person previously convicted of the offense of unlawful possession of a weapon by a felon on October 24, 2001, in the circuit court of Marion County, Illinois, and the offense of burglary on March 30, 1990, in the circuit court of Madison County, Illinois, knowingly possessed a .380-semiautomatic handgun on or about his person.

[2]The PSI is sealed; however, the information pertinent to this appeal is contained in the transcript of the report of proceedings from defendant's sentencing hearing.

where defendant knowingly possessed a .380-semiautomatic handgun on or about his person, and unlawful possession of a weapon by a felon on October 24, 2001. The State indicated that the PSI further revealed that defendant amassed numerous disciplinary violations for misbehaving at the Madison County jail in the weeks leading up to his trial.

¶ 7 The State informed the trial court that the first degree murder conviction carried a sentencing range of 20 to 60 years, plus 25 years to life with the firearm enhancement. Additionally, on the attempted first degree murder conviction, defendant faced a possible sentence of 6 to 30 years, plus 25 years to life with the firearm enhancement, to be served consecutively with the first degree murder conviction, pursuant to section 5-8-4(d)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(1) (West 2014)). In response, defense counsel argued defendant's sentence was unconstitutional, where it "disproportionately treats [defendant] at his age much more severely than it treats an individual that's 18 or 20." Specifically, defense counsel argued that defendant, a 56-year-old black man, likely had a life expectancy of less than 75 years. With that in mind, defense counsel requested the court impose a 20-year sentence without a firearm enhancement for the first degree murder conviction. In the event the court felt mandatory consecutive sentencing was appropriate, defense counsel requested the court sentence defendant to six years' imprisonment for the attempted first degree murder conviction. Defense counsel stated that defendant's proposed sentencing was already a life sentence because "that would get him to approximately 81 years of age, well past his life expectancy."

¶ 8 In his statement of allocution, defendant accused Daniel of murdering Angel when Daniel attempted to shoot and kill defendant. Defendant, claiming he was a "victim of circumstances," stated he was wrongfully convicted because he was a "black[,] young man here in America." In response to this statement, the trial court interrupted defendant and stated, "Mr. Sykes, 12 people

3

found you convicted of murder," to which defendant responded: "Judicially wrongly found me. Less than a half hour." Subsequently, defendant became upset with the trial court judge, and the following colloquy took place:

"DEFENDANT: You ain't [*sic*] got to raise your voice. I can hear you. I can hear you. You don't have to raise your voice.
THE COURT: Then you shut up. You understand that?
DEFENDANT: Not the way you are addressing me. No, I don't understand that.
THE COURT: I'm going to impose sentence but he [defendant] can be next door.
DEFENDANT: You [are] not God because you sitting [*sic*] up there. You [are] not [G]od."

Following the court's instruction to remove defendant from the courtroom, the court sentenced defendant to 125 years' imprisonment in the IDOC. Defendant moved the court to reconsider his sentence, arguing that his consecutive sentence was excessive where the court failed to consider his rehabilitative potential. Defendant did not mention his mental health diagnoses and substance abuse issues in the motion to reconsider his sentence.

¶ 9    On July 7, 2020, the trial court held a hearing on defendant's motion to reconsider sentence. At the hearing, defense counsel argued that the court failed to consider defendant's rehabilitative potential. Counsel additionally argued that defendant's sentence was unconstitutional, where "based on Mr. Sykes's age, even the minimum sentence, in essence, is a life sentence." In arguing defendant's rehabilitation potential, defense counsel did not mention his mental health diagnoses and substance abuse issues. In response, the State objected to defendant's motion to reconsider, arguing that the court heard the evidence and considered the seriousness of the offenses before it imposed a sentence within the sentencing range provided by law. Additionally, the State did not recall the presentation of any evidence in mitigation by defense counsel at the hearing. Following argument by the parties, the court, in considering all factors in mitigation and aggravation, and finding the "most appropriate" of these factors was criminal history and the deterrence of others

4

from committing the same crime, denied defendant's motion to reconsider sentence. Defendant filed a timely appeal.

¶ 10                                    II. Analysis

¶ 11    At issue in this appeal is whether defendant's 125-year sentence is excessive. It is well settled that the trial court has broad discretionary powers in imposing a sentence (*People v. Fern*, 189 Ill. 2d 48, 53 (1999)), and the court's sentencing decision is entitled to great deference (*People v. Perruquet*, 68 Ill. 2d 149, 154 (1977)). "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54 (citing *People v. Cabrera*, 116 Ill. 2d 474, 493-94 (1987)). Because the trial court is in a superior position to evaluate the defendant's credibility and demeanor and to balance the various factors in aggravation and mitigation, a reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed the above-mentioned factors differently. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Absent an abuse of discretion by the trial court, a defendant's sentence may not be altered on review. *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *Perruquet*, 68 Ill. 2d at 153.

¶ 12    In sentencing a defendant, the trial court must consider the character and circumstances of the offense (*People v. Bowman*, 357 Ill. App. 3d 290, 303 (2005)) and "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age" (*Perruquet*, 68 Ill. 2d at 154), as well as his future dangerousness and potential for rehabilitation (*People v. Thompson*, 222 Ill. 2d 1, 35 (2006); *People v. Averett*, 381 Ill. App. 3d 1001, 1020 (2008)). Of these factors, the seriousness of the offense is the most important factor for consideration. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 11 (citing *People v. Jones*, 376 Ill. App. 3d 372, 394 (2007); *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007)).

5

¶ 13    We first address defendant's claim that the trial court abused its discretion by failing to properly consider his mental health diagnoses and substance abuse issues. The State responds that defendant forfeited this contention by failing to raise it in his motion to reconsider his sentence. We agree. Defendant raised the issues neither in the motion to reconsider his sentence nor at the hearing on the motion. This was a forfeiture. *People v. Bustos*, 2020 IL App (2d) 170497, ¶ 120 (citing *People v. Hillier*, 237 Ill. 2d 539, 544 (2010)).

¶ 14    We may, however, review a forfeited claim of error if defendant establishes plain error. *Hillier*, 237 Ill. 2d at 544. In his reply brief, defendant raised the issue of plain error for the first time. It is only after the State, in its appellee's brief, pointed out defendant's omission that defendant argued for the first time the plain-error doctrine. "It is well settled that issues raised for the first time in the appellant's reply brief shall be deemed waived on appeal." *People v. Brownell*, 123 Ill. App. 3d 307, 319 (1984). Because defendant raised this issue for the first time in his reply brief, we need not consider this issue.

¶ 15    Defendant also contends the trial court failed to consider his rehabilitative potential. We disagree. Although this court agrees that an opportunity for rehabilitation should be provided in most cases, here, the court found that the circumstances required otherwise. We note that the defendant's history and character are factors to consider when evaluating a defendant's rehabilitative potential. *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010). Further, "it stands to reason that a defendant's relative risk of recidivism is also a proper consideration, as one less likely to reoffend must have a greater chance of restoration to useful citizenship." *People v. Cetwinski*, 2018 IL App (3d) 160174, ¶ 69. However, the nature and circumstances of the offense are governing factors in the determination of rehabilitative potential. *Flores*, 404 Ill. App. 3d at 159.

¶ 16 The evidence presented before the trial court reveals that defendant had a history of criminal action that spanned over three decades. Specifically, defendant had 6 misdemeanor convictions and 10 felony convictions, which included, among others, the forcible felony of burglary on March 30, 1990, where defendant knowingly possessed a .380-semiautomatic handgun on or about his person, and unlawful possession of a weapon by a felon on October 24, 2001. Additionally, even when he was incarcerated, defendant chose to amass numerous disciplinary violations for misbehaving at the Madison County jail in the weeks leading up to his jury trial. Moreover, defendant, in his statement of allocution, accused Daniel of murdering Angel while Daniel attempted to murder defendant. Although defendant stated he was remorseful, his words indicate otherwise, where he maintained he was "a victim of circumstances," who had been wrongfully convicted because he was a "black[,] young man here in America."

¶ 17 Lastly, the trial court's sentence is within the statutory prescribed sentencing range. Specifically, the first degree murder conviction carried a sentencing range of 20 to 60 years, plus 25 years to life with the firearm enhancement. Additionally, on the attempted first degree murder conviction, defendant faced a possible sentence of 6 to 30 years, plus 25 years to life with the firearm enhancement, to be served consecutively with the first degree murder conviction. Given these facts, we cannot conclude that the court abused its discretion when it imposed a 125-year sentence.

¶ 18                                III. Conclusion

¶ 19 For the reasons stated, we affirm the judgment of the circuit court of Madison County.


¶ 20 Affirmed.

7